1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10

11 ROBERTA FLORES,         )   NO. CV 17-5831-E
                        )

12          Plaintiff,    )
                        )

13      v.               )   **MEMORANDUM OPINION**
                        )

14 NANCY A. BERRYHILL, Acting  )   **AND ORDER OF REMAND**
Commissioner of Social Security,  )

15                         )
         Defendant.    )

16 _____)

17

18     Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

19 HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

20 judgment are denied, and this matter is remanded for further

21 administrative action consistent with this Opinion.

22

23                  **PROCEEDINGS**

24

25     Plaintiff filed a Complaint on August 7, 2017, seeking review of

26 the Commissioner's denial of benefits. The parties filed a consent to

27 proceed before a United States Magistrate Judge on September 1, 2017.

28 ///

On January 19, 2018, Plaintiff filed a motion for summary judgment. On February 13, 2018, Defendant filed a "Memorandum in Support of Defendant's Answer," which the Court has construed as Defendant's motion for summary judgment. The Court has taken both motions under submission without oral argument. <u>See</u> L.R. 7-15; "Order," filed August 15, 2017.[1]

**BACKGROUND**

Plaintiff, a former medical assistant and office manager, reportedly stopped working in 2009 after she allegedly injured her back and neck on the job while lifting a patient (Administrative Record ("A.R.") 38, 55). Plaintiff filed a related Workers' Compensation case that settled (A.R. 38-39).

On May 8, 2013, Plaintiff applied for disability insurance benefits, asserting disability beginning February 3, 2010, based on alleged physical and mental impairments (A.R. 184-85, 198-99, 226-27, 245-46). Presented to an Administrative Law Judge ("ALJ") were, <u>inter alia</u>:

1.  a February 9, 2011 report authored by her Workers' Compensation treating orthopedist, Dr. Simon Lavi (A.R. 380-89). Dr. Lavi opined that Plaintiff's orthopedic impairments would preclude Plaintiff from "pushing, pulling,

---

[1]     Defendant's motion violates paragraph VI of this Court's "Order," filed August 15, 2017. Defendant's counsel shall heed the Court's orders in the future.

gripping, grasping, forward reaching, and working at or
above shoulder level" (A.R. 384-85). These impairments
reportedly included right carpal tunnel syndrome per
clinical evidence (A.R. 284, 289-90, 294, 349-50, 356, 363,
375, 381-82, 384), cervical disc protrusion at C5-C6 and C6-
C7 per MRI study (A.R. 295-96, 384-85), right shoulder
impingement with labral tear per MRI study (A.R. 295-96,
385), and left shoulder impingement syndrome per examination
(A.R. 385, 395));

2.   a September 12, 2013 internal medicine evaluation report
authored by consultative examiner Dr. Marvin Perer (A.R.
417-21). Dr. Perer opined that Plaintiff's impairments
(which included multiple joint pain of unknown etiology,
right carpal tunnel syndrome, and degenerative disc disease
of the cervical spine (by history)) would limit Plaintiff to
light work with occasional gross manipulation of the right
upper extremity (A.R. 421); and

3.   state agency review physicians' opinions:  (a) on initial
evaluation limiting Plaintiff to light work with "limited"
(i.e., occasional) handling (gross manipulation) of the
right side based on Dr. Perer's opinion (A.R. 71-73); and
(b) on reconsideration limiting Plaintiff to medium work
with "limited" (i.e., occasional) overhead reaching,
bilaterally, but with "unlimited" handling, also purportedly
based, at least in part, on Dr. Perer's opinion (A.R. 111-
12).

In a February 10, 2016 decision, the ALJ found that Plaintiff has
the following "severe" impairments: degenerative disc disease,
bilateral shoulder pain, fibromyalgia, obesity, a mood disorder, and
psoriasis (but not carpal tunnel syndrome) (A.R. 17-18). The ALJ
opined that Plaintiff could perform a reduced range of light work
with: (1) occasional postural activities but no climbing of ladders,
ropes or scaffolds; (2) occasional over the shoulder work,
bilaterally; (3) no work around unprotected heights or dangerous
machinery; (4) non-complex routine tasks but no tasks requiring
hypervigilance, responsibility for the safety of others, or public
interaction (A.R. 21-27). The ALJ identified certain light work jobs
Plaintiff assertedly could perform, and, on that basis, denied
disability benefits (A.R. 28-29 (adopting vocational expert testimony
at A.R. 55-57)).

In determining Plaintiff's residual functional capacity, the ALJ
purportedly gave "some weight" to Dr. Lavi's opinion as consistent
with Dr. Lavi's clinical findings (A.R. 26). However, the ALJ did not
adopt Dr. Lavi's preclusions from pushing, pulling, gripping,
grasping, forward reaching, and working at or above shoulder level
(A.R. 26). The ALJ described these preclusions as "relatively
reasonable," and yet failed to adopt them, ostensibly because Dr. Lavi
had "not performed any recent evaluations" of Plaintiff or reviewed
additional records in evidence (A.R. 26). The ALJ gave "little
weight" to Dr. Perer's opinion that Plaintiff should be limited to
occasional gross manipulation of the right upper extremity (A.R. 26).
The ALJ asserted that Dr. Perer's opinion was based on "only one brief
encounter," that Dr. Perer failed to review all the medical records,

and that EMG results supposedly showed that Plaintiff does not currently have right carpal tunnel syndrome (A.R. 26). The ALJ purportedly gave "great weight" to the state agency review physicians' opinions in part because these physicians "had the opportunity to review some of the records in evidence" (A.R. 25).

On June 19, 2017, the Appeals Council denied review (A.R. 1-4). Plaintiff had submitted to the Appeals Council additional evidence dated September 23, 2015 through February 3, 2016 (during the alleged disability period), which the Appeals Council declined to "consider and exhibit" (A.R. 2). The Appeals Council stated that the evidence did not show a reasonable possibility of changing the outcome of the decision (A.R. 2). Plaintiff also had submitted to the Appeals Council additional medical evidence post-dating the ALJ's decision, which the Appeals Council declined to include in the record, stating that the evidence did not relate to the disability period at issue (A.R. 2).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971) (citation and quotations omitted); <u>see also</u> <u>Widmark v.</u>

<u>Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).


> If the evidence can support either outcome, the court may
> not substitute its judgment for that of the ALJ.  But the
> Commissioner's decision cannot be affirmed simply by
> isolating a specific quantum of supporting evidence.
> Rather, a court must consider the record as a whole,
> weighing both evidence that supports and evidence that
> detracts from the [administrative] conclusion.

<u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

quotations omitted).

**DISCUSSION**

**I.    On the Present Record, Substantial Evidence Does Not Support the
ALJ's Decision.**

The ALJ's decision purports to rely on the opinions of the non-examining state agency physicians to find Plaintiff capable of performing occasional over the shoulder work, bilaterally, with no other manipulative limitations (A.R. 25).  Plaintiff challenges the ALJ's rejection of the contrary opinions of Plaintiff's treating physician, Dr. Lavi.  <u>See</u> Plaintiff's Motion, pp. 8-9.  For the reasons discussed below, the ALJ materially erred in the evaluation of Plaintiff's alleged physical impairments.

A. **Summary of Dr. Lavi's Treatment Records and the Medical Opinion Evidence Concerning Plaintiff's Alleged Physical Impairments**

Dr. Lavi first examined Plaintiff on March 15, 2010 (A.R. 280-87). Plaintiff reported she developed pain to her right wrist in 2005, which she attributed to the repetitive typing and filing required by her job (A.R. 281). Plaintiff reported that she began having neck and bilateral shoulder pain in mid-2008, which she attributed to the repetitive lifting of file boxes (A.R. 281). Over time, her symptoms reportedly increased, and by 2009 Plaintiff allegedly was having headaches and difficulty sleeping (A.R. 281). In December of 2009, Plaintiff reportedly developed symptoms of depression and nausea associated with burning in her stomach, which she attributed to job-related stress (A.R. 281). On February 4, 2010, Plaintiff sought treatment with her personal physician and was taken off work secondary to stress (A.R. 281). Plaintiff reported continued numbness in her fingers and pain in her right wrist, neck, and shoulders since being off work (A.R. 281). Plaintiff complained of: (1) constant pain in the cervical spine radiating to the upper extremities and paresthesia, aggravated by repetitive motions of the neck, lifting, pushing, pulling, forward reaching, and working at or above shoulder level; (2) intermittent pain in both shoulders aggravated by forward reaching, lifting, pushing, pulling, and working at or above shoulder level; (3) intermittent pain in the right wrist associated with tingling and numbness, aggravated by gripping, grasping, pushing, pulling, and lifting, which causes difficulty with fine manipulation (A.R. 282).

On examination of the cervical spine, Dr. Lavi noted paravertebral muscle tension, positive axial loading compression, and positive Spurling's maneuver with symptomatology into the C5-C6 and C6-C7 dermatomes, right side more pronounced than left (A.R. 283). Examination of Plaintiff's shoulders reportedly revealed tenderness in the bilateral trapezius and deltoid regions, positive axial loading compression, tenderness around the anterior glenohumeral region and subacromial space, and positive Hawkins and impingement signs (A.R. 284). Examination of Plaintiff's right wrist reportedly revealed tenderness at the volar aspect, positive Tinel and Phalen signs, pain with terminal flexion, and dysethesia at the radial digits (A.R. 284). X-rays of Plaintiff's cervical spine showed disc space height collapse at C5-C6 and C6-C7 with unconvertebral joint arthrosis and calcification over the anterior longitudinal ligament (A.R. 284). X-rays of Plaintiff's shoulders showed no abnormalities (A.R. 284). Dr. Lavi diagnosed cervical discopathy/radiculitis, right greater than left, and clinical right carpal tunnel syndrome (A.R. 284). Dr. Lavi noted to rule out bilateral shoulder impingement/rotator cuff tear (A.R. 284). Dr. Lavi ordered further testing and prescribed acupuncture, physical therapy, and medication (A.R. 285). Dr. Lavi considered Plaintiff temporarily totally disabled and ordered follow up in several weeks (A.R. 286).

Dr. Lavi's physician's assistant evaluated Plaintiff again in April and May of 2010 (A.R. 288-98). This assistant prepared progress reports which Dr. Lavi reviewed and approved (A.R. 288-98). Examination findings did not change (A.R. 289-90, 294). Electrodiagnostic studies of the bilateral upper extremities were

normal (A.R. 295; see also A.R. 495-500 (normal electrodiagnostic studies from September 2015)).  An MRI of the cervical spine showed mild levoscoliosis, straightening of the cervical spine, a 2-3 mm disc protrusion at C5-C6, and a 3-4 mm disc protrusion at C6-C7 compromising the nerve root on the left (A.R. 295; see also A.R. 494 (September 2015 cervical spine MRI showing similar findings)).  An MRI of the right shoulder showed superior and anterior labral tears, athrosis of the the acromioclavicular joint, downward sloping of the acromion, impingement, several benign cysts, fluid in the joint, anterior and posterior capsulitis, and sprain (A.R. 295).  The report reflects additional diagnoses of cervical disc protrusion at C5-C6 and C6-C7, and right shoulder impingement with labral tear (A.R. 296).  Plaintiff was referred for pain management (A.R. 297).

    Dr. Lavi evaluated Plaintiff again in June of 2010 and prepared a progress report (A.R. 348-54).  Plaintiff complained of increasing symptomatology and progressive weakness in the upper extremities (A.R. 349).  Plaintiff reportedly had failed all "conservative [treatment] measures" (i.e., activity modification, physical therapy, and pain management) (A.R. 349).  Physical examination revealed findings similar to the findings made during Dr. Lavi's initial examination. Compare A.R. 349-50 with A.R. 283-84.  Diagnoses remained unchanged from the May visit (A.R. 350).  Dr. Lavi injected Plaintiff's right shoulder with Celestone, Lidocaine, and Marcaine, and reported significant symptom relief subsequent to the injection (A.R. 350). Dr. Lavi ordered pain medication and requested approval for a C5-C6 and C6-C7 anterior cervical microdiscectomy with implantation of dynamic hardware (A.R. 351-52).  According to Dr. Lavi, Plaintiff

remained temporarily totally disabled (A.R. 353).

Dr. Lavi's physician's assistant evaluated Plaintiff in August of 2010, November of 2010, and January of 2011 (A.R. 355-67, 374-79). Findings on examinations were consistent with prior findings. Compare A.R. 356, 363, and 375 with A.R. 283-84, 349-50. By November of 2010, Plaintiff had received a cervical epidural steroid injection with some relief of her symptomatology (A.R. 363). By January of 2011, Plaintiff had received a second cervical steroid injection with some improvement (A.R. 375). Plaintiff was approved to follow up with other specialists (A.R. 365, 377). Plaintiff was awaiting authorization for cervical spine surgery (A.R. 377). According to Dr. Lavi's physician's assistant, Plaintiff remained temporarily totally disabled (A.R. 378).

Dr. Lavi prepared a "Permanent and Stationary" report dated February 9, 2011 (A.R. 380-89). Dr. Lavi stated that Plaintiff's relief from cervical steroid injections was "short-lived," and Plaintiff still was awaiting surgical authorization (A.R. 380-81). Examination findings reportedly were unchanged (A.R. 381). Dr. Lavi believed Plaintiff's condition had plateaued, and Dr. Lavi considered Plaintiff permanent and stationary based on: (1) clinical evidence of right wrist carpal tunnel syndrome (including positive Tinel and Phalen signs); (2) MRI findings consistent with examinations of the cervical spine and right shoulder; and (3) and positive signs of left shoulder impingement and tenderness over the subacromial region on examination (A.R. 384-85; see also A.R. 395 (supplemental report noting omitted diagnosis of left shoulder impingement syndrome)). Dr.

Lavi opined that Plaintiff should be precluded from: "repetitive and/or prolonged positioning of the cervical spine, heavy lifting, pushing, pulling, gripping, grasping, forward reaching and working at or above shoulder level" (A.R. 385). Dr. Lavi stated that Plaintiff should be considered a "Qualified Injured Worker" for vocational rehabilitation training to enable Plaintiff to resume gainful employment within Dr. Lavi's recommended guidelines (preclusions) (A.R. 386).

Consultative examiner Dr. Perer prepared an internal medicine evaluation dated September 12, 2013 (A.R. 417-21). There is no indication whether Dr. Perer reviewed any medical records (A.R. 417). During the examination, Plaintiff complained of headaches, joint pain (shoulders, elbows, hips, and knees), and neck and back pain (A.R. 417-18). Plaintiff reportedly was taking several medications (A.R. 418). Examination was unremarkable but for notations that Plaintiff was obese and had a positive Tinel sign on the right wrist (A.R. 418-21). Dr. Perer diagnosed multiple joint pain of unclear etiology, right carpal tunnel syndrome, and degenerative disc disease of the cervical spine (by history) (A.R. 421). Dr. Perer opined that Plaintiff would be limited to light work with only occasional gross manipulation of the right upper extremity (A.R. 421).

Consultative examiner Dr. Mehran Sourehnissani prepared an internal medicine evaluation dated February 20, 2014 (A.R. 448-52). There is no indication whether Dr. Sourehnissani reviewed any medical records (A.R. 449). During the examination, Plaintiff complained of generalized body aches (i.e., pain in her entire body and joints),

lack of energy, lack of refreshed sleep, and said she had been
diagnosed with fibromyalgia (A.R. 448). Examination was unremarkable
but for notations that Plaintiff was obese, had zero to two pounds of
grip strength in her hands "with poor effort," and had trigger point
tenderness (A.R. 449-51). Dr. Sourehnissani diagnosed fibromyalgia
syndrome and right knee pain status post arthroscopic surgery (A.R.
451). Dr. Sourehnissani opined that Plaintiff could perform medium
work with no limitations (A.R. 452).

On initial review in September of 2013, Dr. William Collie, a
non-examining state agency review physician, reviewed portions of the
medical record including treatment records from Dr. Lavi, Dr. Lavi's
Permanent and Stationary Report, and Dr. Perer's opinion (A.R. 64-78).
Dr. Collie reportedly gave "great weight" to Dr. Perer's opinion (A.R.
71). Dr. Collie purportedly did not consider the opinions expressed
in Dr. Lavi's Permanent and Stationary Report to constitute medical
opinions, and Dr. Collie did not indicate whether he gave any weight
to Dr. Lavi's opinions. See A.R. 67 (describing Dr. Lavi's records as
containing no opinion evidence), A.R. 71 (excluding Dr. Lavi's
opinions from "treating sources with medical opinions"). Dr. Collie
opined that Plaintiff has a residual functional capacity for a reduced
range of light work with, inter alia, "limited" (occasional) handling
(gross manipulation) on the right side based on Dr. Perer's evaluation
(A.R. 71-73).

On reconsideration, Dr. H. Pham, another non-examining state
agency review physician, reviewed additional medical records and
opinions from doctor(s) with South Atlantic Medical Group from April

and May of 2014 (A.R. 97-117).  These records and opinions reviewed by
Dr. Pham are not a part of the Administrative Record.  Dr. Pham
reportedly gave "great weight" to Dr. Perer's opinion and to the
missing South Atlantic Medical Group opinions (A.R. 111).  Like Dr.
Collie, Dr. Pham did not consider Dr. Lavi's opinions to constitute
medical opinions (A.R. 104-05, 111).  Dr. Pham opined that Plaintiff
has a residual functional capacity for medium work with, <u>inter alia</u>,
"limited" (occasional) overhead reaching, bilaterally, but with
unlimited handling (A.R. 111-12).

> **B.**   **<u>Substantial Evidence Does Not Support the ALJ's Residual</u>**
>          **<u>Functional Capacity Determination; the ALJ Failed to Provide</u>**
>          **<u>Legally Sufficient Reasons for Discounting or Rejecting Dr.</u>**
>          **<u>Lavi's Opinions.</u>**

The opinions of the non-examining state agency physicians, which
contradict Dr. Lavi's opinions, do not constitute substantial evidence
to support the ALJ's decision.  "The opinion of a nonexamining
physician cannot by itself constitute substantial evidence that
justifies the rejection of the opinion of either an examining
physician <u>or</u> a treating physician." <u>Lester v. Chater</u>, 81 F.3d 821,
831 (9th Cir. 1995) (emphasis in original); <u>see also</u> <u>Orn v. Astrue</u>,
495 F.3d 625, 632 (9th Cir. 2007) ("When [a nontreating] physician
relies on the same clinical findings as a treating physician, but
differs only in his or her conclusions, the conclusions of the
[nontreating] physician are not 'substantial evidence.'"); <u>Pitzer v.</u>
<u>Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining
physicians' conclusion, with nothing more, does not constitute

substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician").

In this case, the state agency review physicians did not even consider Dr. Lavi's opinions to be medical opinions.  In actuality, Dr. Lavi's opinions were the only treating source opinions of record concerning Plaintiff's physical impairments.

The opinions of treating physicians command particular respect.  "As a general rule, more weight should be given to the opinion of the treating source than to the opinion of doctors who do not treat the claimant. . . ."  Lester v. Chater, 81 F.3d at 830 (citations omitted).  A treating physician's conclusions "must be given substantial weight."  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988); see Rodriquez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) ("the ALJ must give sufficient weight to the subjective aspects of a doctor's opinion. . . .  This is especially true when the opinion is that of a treating physician") (citation omitted); see also Orn v. Astrue, 495 F.3d at 631-33 (discussing deference owed to treating physicians' opinions).  Even where the treating physician's opinions are contradicted, as here,[2] "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) (citation, quotations and brackets omitted);

_____

[2]     Rejection of an uncontradicted opinion of a treating physician requires a statement of "clear and convincing" reasons. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

14

see Rodriguez v. Bowen, 876 F.2d at 762 ("The ALJ may disregard the treating physician's opinion, but only by setting forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence") (citation and quotations omitted). These reasons must be stated in the ALJ's decision itself; the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

Here, the ALJ's stated reasons for discounting or rejecting Dr. Lavi's opinions are legally insufficient. First, the timing of Dr. Lavi's opinions, which post-dated the alleged onset date by a little over one year, is not a specific, legitimate reason for discounting or rejecting Dr. Lavi's opinions. Dr. Lavi's opinions were based on his treatment of Plaintiff, which began not long after Plaintiff claimed her symptoms became disabling. Dr. Lavi's opinions were directly relevant to the period of alleged disability.

The Court is mindful of case authority indicating that, as a general matter, a more recent medical opinion may have more probative value as to a claimant's current abilities than an older opinion. See, e.g., Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986); Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). However, these authorities apply only if the record reflects that the claimant's condition has changed in the period between the two opinions. See Stone v. Heckler, 761 F.2d at 532 (finding that the most recent medical opinion was the most probative because the claimant's condition "was progressively

deteriorating"); cf. Young v. Heckler, 803 F.2d at 968 (declining to afford greater weight to a more recent report when "it is far from clear that [claimant's] condition was progressively deteriorating").

Here, contrary to the ALJ's apparent assumption, the record is far from clear that Plaintiff's conditions improved after Dr. Lavi stopped treating Plaintiff. The objective evidence in the record suggests that Plaintiff's spine, shoulder, and wrist conditions which caused Plaintiff pain persisted throughout the period of alleged disability. Compare A.R. 295-96 (Dr. Lavi's summary of the 2010 diagnostic studies) with: (1) A.R. 495-500 (September, 2015 normal upper extremity electrodiagnostic study) and A.R. 609 (June, 2015 bilateral wrist x-ray showing bone or calcific density in the dorsal aspect of the carpal bones at the base of the right third metacarpal); (2) A.R. 494 (September, 2015 MRI of the cervical spine showing mild disc dessication of C6-C7 with a 2 mm bulge causing mild central canal stenosis, 1 mm disc protrusions at C3-C4 and C5-C6, and mild reversal of the lordotic curvature); A.R. 604 (June, 2015 lumbar spine x-ray showing osteoporosis with spondylosis, degenerative disc disease at L5-S1, and 1 mm spondylolisthesis of L5 on S1); A.R. 633 (December, 2012 lumbar spine x-ray showing mild osteoarthritic spurring but no compression or disc space narrowing); see also A.R. 543 (July 5, 2012 treatment note for upper body pain finding "12/12" positive tender points and diagnosing Plaintiff with fibromyalgia). The ALJ found Plaintiff suffers from severe degenerative disc disease, bilateral shoulder pain, and fibromyalgia (A.R. 17). Moreover, as long as an opinion relates to the period of alleged disability, the opinion is material. A claimant may be entitled to benefits for a past

disability even if improvement has rendered the claimant able to work currently.

Second, the fact that Dr. Lavi may not have reviewed additional (unidentified) medical records is also not a specific, legitimate reason for discounting Dr. Lavi's opinions. See, e.g., Fowler v. Berryhill, 2018 WL 566217, at *10 (D. Or. Jan. 26, 2018) (finding ALJ did not provide specific, legitimate reasons for rejecting a treating or examining doctor's opinion in favor of another doctor's opinion who had "reviewed additional evidence and found no limitation"; "A doctor's decision is not necessarily entitled to more weight than another doctor's opinion merely because the opinion is more recent, especially when the earlier doctor was a treating or examining specialist"; the ALJ's mere reference to the fact that the treating physician had additional records that could have been considered does not justify discounting the treating physician's opinion); Barrera v. Commissioner, 2018 WL 481344, at *10 (E.D. Cal. Jan. 19, 2018) ("The fact that [examining doctor] did not review any medical records is not in itself a specific and legitimate reason supported by substantial evidence to reject his opinion. The appropriate question is whether medical records that are part of the administrative record would have challenged or called into question the opinion."). As discussed above, Dr. Lavi based his opinions on clinical findings and testing, which the ALJ observed were consistent with the opinions (A.R. 26). The ALJ's cursory discounting or rejection of Dr. Lavi's opinions was error under the circumstances of this case.

///

///

Defendant may be arguing that Dr. Lavi's opinions properly were discounted or rejected as assertedly based on Plaintiff's subjective complaints (see Defendant's Motion, p. 9), and/or because Dr. Lavi's opinions allegedly contradicted the opinion of another Workers' Compensation examiner or the opinion of another physician (see Defendant's Motion, p. 10). However, the Court cannot uphold the ALJ's decision on the basis of reasons the ALJ did not invoke, and the ALJ did not invoke these reasons. See Pinto v. Massanari, 249 F.3d at 847 (the court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). Moreover, the contradiction of a treating physician's opinion by another physician's opinion triggers rather than satisfies the requirement of stating "specific, legitimate reasons." See, e.g., Valentine v. Commissioner, 574 F.3d 685, 692 (9th Cir. 2007); Orn v. Astrue, 495 F.3d at 631-33; Lester v. Chater, 81 F.3d at 830-31.

Accordingly, the ALJ erred by discounting or rejecting the opinions of Dr. Lavi without stating legally sufficient reasons for doing so.

## II. The Court is Unable to Determine that the ALJ's Errors Were Harmless.

An error "is harmless where it is inconsequential to the ultimate non-disability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotations omitted); see Treichler v. Commissioner, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and

18

ambiguous, the proper approach is to remand the case to the agency"); cf. McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (error not harmless where "the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error").

The ALJ's error may have prejudiced Plaintiff.  In deciding that Plaintiff is not disabled, the ALJ relied on a supposed residual functional capacity for light work limited to occasional over the shoulder work, bilaterally, with no other upper extremity limitations (A.R. 21).  If Plaintiff were limited to no pushing, pulling, gripping, grasping, forward reaching, or working at or above shoulder level (as Dr. Lavi opined), such limitations might well alter the ALJ's conclusion.  The vocational expert (on whose testimony the ALJ relied) did not identify any jobs performable by a person with these limitations (A.R. 55-58).  According to the Dictionary of Occupational Titles ("DOT"), all of the jobs the vocational expert did identify require frequent handling and fingering.  See DOT 209.587-034 (Marker), 1991 WL 671802 (1991); DOT 529.587-014 (Sausage Inspector), 1991 WL 674625 (1991); DOT 729.687-010 (Assembler, Electrical Accessories I), 1991 WL 679733 (1991).

III. **A Remand with a Directive for the Immediate Payment of Benefits Would not be an Appropriate Remedy in the Present Case.**

The "extreme remedy" of a "remand for an immediate award of benefits is appropriate . . . only in rare circumstances."  Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (citations and

quotations omitted); see INS v. Ventura, 537 U.S. 12, 16 (2002)
(remand without a directive for an immediate award of benefits is "the
proper course, except in rare circumstances."); Leon v. Berryhill, 880
F.3d 1041, 1044 (9th Cir. 2017) (reversal with a directive for the
immediate calculation of benefits is a "rare and prophylactic
exception to the well-established ordinary remand rule").  In the
Ninth Circuit, a remand for an immediate award of benefits properly
may occur only where:


    (1) the record has been fully developed and further
    administrative proceedings would serve no useful purpose;
    (2) the ALJ has failed to provide legally sufficient reasons
    for rejecting evidence, whether claimant testimony or
    medical opinion; and (3) if the properly discredited
    evidence were credited as true, the ALJ would be required to
    find the claimant disabled on remand.


Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014); see Dominguez
v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (district court should
examine whether the record "is fully developed, is free from conflicts
and ambiguities, and all essential factual issues have been resolved.
. . .  Unless the district court concludes that further administrative
proceedings would serve no useful purpose, it may not remand with a
direction to provide benefits") (citations and quotations omitted);
Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531
U.S. 1038 (2000) (district court may not properly direct an immediate
award of benefits unless, among other things, "there are no
outstanding issues that must be resolved before a determination of

disability can be made, and . . . it is clear from the record that the ALJ would be required to find the claimant disabled" if the improperly rejected evidence were credited) (citations and quotations omitted).[3]

In the present case, it is not clear that the ALJ would be required to find Plaintiff disabled for the entire period of claimed disability even if Dr. Lavi's opinions were credited as true.  <u>See</u> <u>Luna v. Astrue</u>, 623 F.3d 1032, 1035 (9th Cir. 2010).  Accordingly, the Court will not direct the immediate payment of benefits.

**CONCLUSION**

For all of the foregoing reasons,[4] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded

///
///
///
///
///
///

----

[3] Even when these standards are met, the district court retains "some flexibility" to refuse to remand for an immediate award of benefits.  <u>See</u> <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003); <u>see also</u> <u>Garrison v. Colvin</u>, 759 F.3d at 1021-22 (perhaps limiting this "flexibility" to circumstances where "an evaluation of the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled").

[4] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be an appropriate remedy at this time.

for further administrative action consistent with this Opinion.

        LET JUDGMENT BE ENTERED ACCORDINGLY.

            DATED:  March 8, 2018.


                                    /s/
                            CHARLES F. EICK
                    UNITED STATES MAGISTRATE JUDGE